IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AMERIX CORPORTATION, et al., | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. JFM-11-2844 |
| | * | Related Cases: JFM-05-3028 |
| | * | JFM-11-2192 |
| | * | JFM-09-1498 |
| LAVERNE JONES, et al., | * | |
| Defendants. | * | |
| | * | |
| | * | |
| | ****** | |
| GENUS CREDIT MANAGEMENT | * | |
| CORPORTATION, et al., | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. JFM-05-3028 |
| | * | Related Cases: JFM-11-2844 |
| | * | JFM-11-2192 |
| | * | JFM-09-1498 |
| LAVERNE JONES, et al., | * | |
| Defendants. | * | |
| | * | |
| | * | |

MEMORANDUM

        Plaintiffs, Amerix Corporation, et al. and Genus Credit Management Corporation,

et al., are defendants in ongoing class arbitration.  They seek a declaratory judgment that the

arbitrator is proceeding *ultra vires* in the class arbitration, as well as injunctive relief against any

further class arbitration proceedings.  Plaintiffs filed a motion for summary judgment regarding

these grounds for relief in JFM-11-2844.  Simultaneously, plaintiffs filed a motion for relief

under Federal Rule of Civil Procedure 60(b) in JFM-05-3028 with respect to this court's 2006

decision declining to vacate the arbitrator's initial Clause Construction Award.  Defendants,

Laverne Jones et al., have filed a motion to dismiss plaintiffs' claim in 11-2844, a motion in

opposition to plaintiffs' Rule 60(b) motion in 05-3028, and a motion to recover attorneys' fees

1

under 28 U.S.C. § 1927.  For the reasons that follow, defendants' motion to dismiss 11-2844 is

granted (thereby mooting plaintiffs' motion for summary judgment), plaintiffs' Rule 60(b)

motion in 05-3028 is denied, and defendants' motion for attorneys' fees is denied.

## BACKGROUND

Jones et al. are parties to separate Debt Management Plans containing an arbitration

provision, which states:

> Any dispute  between us that cannot be amicably resolved, and all claims
> or controversies arising out of this Agreement, shall be settled solely and
> exclusively by binding arbitration in the City of Columbia, Maryland,
> administered by, and under the Commercial Arbitration Rules then
> prevailing of, the American Arbitration Association (it being expressly
> acknowledged that you will not participate in any class action lawsuit in
> connection with any such dispute, claim, or controversy, either as a
> representative plaintiff or as a member of the putative class), and judgment
> upon the award rendered by the arbitrator(s) may be entered and enforced
> in any court of competent jurisdiction.

(Decl. Joshua M. Salzman, Ex. 1, Parties' Agreement, ECF No. 7-3.)  Despite this arbitration

agreement, in March 2004 claimants Jones et al. filed a class action lawsuit against Genus,

Amerix, and others.  (Pls.' Mot. Summ. J. at 3, ECF No. 7-1.)  On January 31, 2005, this court

held that the agreement to arbitrate was valid and therefore dismissed the action.  *See Jones v.*

*Genus Credit Mgmt. Corp.*, 353 F. Supp. 2d 598 (D. Md. 2005).  The court later clarified by

letter that it was for the arbitrator to decide whether the claim could proceed as *class* arbitration

according to the agreement.  (Decl. Joshua M. Salzman, Ex. 2, Letter from J. Motz to Parties

Feb. 24, 2005, ECF No. 7-4.)  None of the parties appealed this court's decision compelling

arbitration and allowing the arbitrator to determine whether class arbitration was precluded by

the agreement.

In 2005 Arbitrator Donald Green issued a Partial Final Clause Construction Award determining that the agreement did not preclude class arbitration. (Pls.' Mot. Summ. J. at 1.) In his eleven-page determination, Arbitrator Green outlined the reasons for finding that the arbitral clause allows class arbitrations. (*See* Pls.' Mot. Summ. J., Ex. 3, Clause Construction Award, ECF No. 7-5.) He considered whether the agreement was "silent" as to class arbitrations given that class arbitrations are not explicitly mentioned, despite an agreement to submit "all claims" to arbitration and an explicit bar on class litigation. (*See id.* at 5.) Arbitrator Green determined that the ambiguity in the clause should be construed against the drafter according to the contract law principle of *contra preferentum*, (*id.*), thereby concluding that class arbitration was not precluded by the agreement. In 2006, this court declined to vacate Green's decision. (Pls.' Mot. Summ. J. at 1.)

Since Green's 2005 Clause Construction Award and this court's 2006 decision not to vacate that award, Green certified a nationwide class. (*Id.* at 5.) Plaintiffs then filed a new suit (JFM-09-1498) seeking vacatur of the class determination award. (*Id.*) This court and the Fourth Circuit have since affirmed Green's class certification, (*see* JFM-09-1498, ECF Nos. 23, 42), and the class arbitration moved forward.

On July 16, 2010, the Supreme Court issued a ruling in *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, holding that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010) (emphasis in original). Plaintiffs requested that Arbitrator Green stay the class arbitration on the basis of the *Stolt-Nielsen* decision, which they characterized as a rejection of the commonly understood teaching of the Court's plurality decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003). (Pls.'

Mot. Summ. J. at 6.)  Green considered briefing by both sides and held a hearing on plaintiffs'

motion before rendering a fifteen-page opinion upholding his initial Clause Construction Award

and declining to issue a stay of the proceedings even in light of *Stolt-Nielsen*.  (Pls.' Mot. Summ.

J, Ex. 10, Green *Stolt-Nielsen* Determination, at 6–7.)  Among other reasons for his decision,

Green determined that *Stolt-Nielsen* should not be applied retroactively because it is arguably not

a change in the law (*see* Pls.' Mot. Summ. J., Ex. 10, Green *Stolt-Nielsen* Determination, at 13–

14).  Rather, *Stolt-Nielsen* is merely a clarification of the importance of the use of contract law

principles to the interpretation of the parties' intent (as opposed to principles and policy

considerations outside the scope of the agreement).  (*Id.*)  In addition, Green determined that

*Stolt-Nielsen* was distinguishable and that even if it were not, his use of contract law principles

and the parties' agreement satisfied the requirements outlined by the *Stolt-Nielsen* Court.

Plaintiffs did not appeal Arbitrator Green's *Stolt-Nielsen* determination to the District

Court but instead filed briefing in JFM-09-1498, which was then on appeal to the Fourth Circuit.

In response to defendants' argument that *Stolt-Nielsen* considerations were not properly before

the court on appeal because they were not addressed in the District Court and because the Clause

Construction Award itself was no longer appealable, the Fourth Circuit declined to consider

plaintiffs' *Stolt-Nielsen* arguments and instead struck all portions of plaintiffs' papers pertaining

to *Stolt-Nielsen*.  (Pls.' Mot. Summ. J. at 6.)

Meanwhile, since Green's 2005 determination, class proceedings have been ongoing on

behalf of hundreds of thousands of individual claimants seeking relief totaling more than $270

million.  (Defs.' Mot. to Dismiss at 36, ECF No. 40-1.)  Having entered the final phase of class

arbitration in early November 2011, the class arbitration is set to conclude by January 20, 2012.

(Letter from Parties to J. Motz, Dec. 6, 2011, ECF No. 44.)

On October 4, 2011, on the eve of the termination of the class arbitration, plaintiffs initiated this action (JFM-11-2844), arguing that the arbitrator is exceeding the scope of his authority under the Federal Arbitration Act (FAA) as interpreted by the Supreme Court in *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010) and reaffirmed in the *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).[1]  (Pls.' Mot. Summ. J. at 1–2.)  Plaintiffs seek injunctive and declaratory relief against the ongoing class arbitration.  They also filed a motion for relief under Federal Rule of Civil Procedure 60(b) in JFM-05-3028, seeking review of this court's 2006 decision declining to vacate the arbitrator's initial Clause Construction Award. (Pls.' Mot. Fed. R. Civ. P. 60(b) in JFM-05-3028, ECF No. 30.)  Now pending before this court are defendants' motion to dismiss 11-2488, to deny the request for Rule 60(b) relief in 05-3028, and for attorneys' fees under 28 U.S.C. § 1927, as well as plaintiffs' motion for summary judgment in 11-2844.

ANALYSIS

I.      Relief Under Federal Rule of Civil Procedure 60(b) (JFM-05-3028)

---

[1] Plaintiffs and defendants disagree as to the importance and weight that should be given to *AT&T Mobility*.  Plaintiffs see it as important stand-alone precedent requiring explicit consent to class arbitration because of the very different nature of class versus individual arbitration. Defendants argue that *AT&T Mobility* merely affirms the rule articulated in *Stolt-Nielsen* that parties should not be subject to class arbitration to which they did not *intend* to be subjected, as interpreted by the arbitrator with reference to the agreement and governing law.  I am inclined to agree with the defendants that *AT&T Mobility* is in accord with *Stolt-Nielsen* and merely elaborates on the importance of interpreting the parties' actual intent rather than applying outside public policy principles to determine the appropriateness of class arbitration.  Therefore, any discussion in this opinion regarding *Stolt-Nielsen* would apply equally to *AT&T Mobility* without need for separate treatment.

Federal Rule of Civil Procedure 60(b) provides relief from a judgment or order based on mistake, inadvertence, surprise, or excusable neglect, or where there is newly discovered evidence that could not have been discovered with reasonable diligence, where there has been fraud, where the judgment is void or has been satisfied or released, or for any other reason justifying relief.  Fed. R. Civ. P. 60(b).  In the Fourth Circuit, the movant must meet three threshold conditions, showing that (1) the motion is timely; (2) she has a meritorious defense; and (3) the opposing party will not be "unfairly prejudiced by having the judgment set aside." *Hale v. Belton Assoc., Inc.*, 305 Fed. Appx. 987, 988 (4th Cir. 2009); *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990).  If these three threshold showings are made, the movant must then show that she is entitled to relief for one of the reasons enumerated in Rule 60.  *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993).  If the moving party satisfies this burden, the court then balances the "competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine, within its discretion, whether relief is appropriate in each case."  *Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981).

Plaintiffs' motion fails to meet even the first threshold requirement: timeliness.  The judgment for which plaintiffs now seek relief (JFM-05-3028) was rendered in 2006, more than five years ago, and plaintiffs did not then appeal the judgment.  Plaintiffs now seek reconsideration of the judgment on the basis of new precedent in *Stolt-Nielsen*, but rather than raise this issue with the District Court in the days immediately following the Supreme Court's decision, plaintiffs filed their Rule 60(b) motion only after Green denied a request for a stay and the Fourth Circuit declined to consider *Stolt*'s impact on the case.  Thus, plaintiffs' motion in this court is not timely.  Even if the court were to be lenient with this lapse in time because of the

pending consideration by the arbitrator and the possibility of a Fourth Circuit determination, plaintiffs cannot satisfy the other threshold requirements.

Most importantly, plaintiffs cannot show that the defendant class will not suffer unfair prejudice.  At the time of plaintiffs' 60(b) motion, hundreds of thousands of class members had been tied up in this pending arbitration for more than seven years.  Resources have been poured into the class arbitration, which is now set to terminate this month.  As a result, even if the request for relief under Rule 60(b) were timely, plaintiffs could not satisfy the requirement that the opposing party would not be unfairly prejudiced by having the judgment set aside.

II.      Request for Declaratory and Injunctive Relief (JFM-11-2844)

Plaintiffs seek declaratory and injunctive relief against further class arbitration proceedings.  Pending before the court are defendants' motion to dismiss and plaintiffs' motion for summary judgment on this newly filed case (11-2844).

A.  Res Judicata, Law of the Case, and Application of *Stolt*

Defendants provide several reasons why the court should dismiss plaintiffs' request for declaratory and injunctive relief in 11-2844, including res judicata and collateral estoppel, law of the case doctrine, application of *Stolt*'s holding to the case at bar, and the principle of deference to the arbitrator's decisions.

1.  Res Judicata and Collateral Estoppel

Res judicata and collateral estoppel can apply to an arbitration when the arbitrator made a decision acting in a judicial capacity; where the issue presented was actually litigated before the arbitrator; and where the issue's resolution was necessary to the arbitrator's decision.  *U.K.*

*Constr. & Mgmt., LLC v. Gore*, 20 A.3d 163, 170 (Md. App. 2011) (citing *Batson v. Shiflett*, 602 A.2d 1191 (Md. App. 1992)).

Plaintiffs want the court to reconsider the arbitrator's Clause Construction Award. Defendants argue that res judicata and collateral estoppel should apply to bar plaintiffs' attempt to relitigate this issue, whether it is merely an issue already decided in another case (05-3028) or a final judgment in and of itself.  Arbitrator Green's decision was a "partial final" award.  Even though it did not constitute a final determination in the entire arbitration, this court held that it was a sufficiently final decision to allow appeal.  *See Genus Credit Mgmt. Corp. v. Jones*, No. Civ. JFM-05-3028, 2006 WL 905936, at *2 (April 6, 2006).  This court cited to Rule 3 of the AAA Supplementary Rules specifically contemplating judicial review of interim "final" awards, such as a Clause Construction Award.  *See id.*  Indeed, pursuant to an arbitrator's clause construction award, parties are allowed a thirty-day stay in which to appeal the award.  *Id.*  Thus, the Clause Construction Award was sufficiently final to constitute a final decision covered by res judicata principles.

Plaintiffs contend there has not been a final judgment in the ultimate case, so the doctrines of res judicata and collateral estoppel should not apply.  They also contend that *Stolt-Nielsen* constitutes a sufficient change in the legal landscape that the doctrines, if applicable in the first place, should not be applied.  (Pls.' Combined Reply for Rule 60(b), Summ. J. & Opp'n to Defs.' Mot. Dismiss at 18–19) (*quoting Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) ("[C]ollateral estoppel does not apply to a legal ruling if there has been a major change in the governing law since the prior adjudication that could render [the] previous determination inconsistent with prevailing doctrine." ) (internal citations omitted)).  Plaintiffs' contentions are without merit.  As discussed below, in my view the judgment as to the clause

construction award was final, and the ruling in *Stolt-Nielsen* is not sufficient to bar application of collateral estoppel or res judicata.  Thus, the principles of res judicata could apply to bar reconsideration of the clause construction, which this court declined to vacate.

2.  Law of the Case Doctrine[2]

The doctrine of law of the case makes a trial court's ruling binding in subsequent stages of the same litigation, unless reversed or modified by a court of appeals.  *Ralkey v. Minnesota Mining & Mfg. Co.*, 492 A.2d 1358, 1361 (Md. App. 1985).  If no appeal is taken, the trial court's ruling stands and is binding on the courts and litigants in further proceedings in the same case.  *Id.*; *Acting Dir., Dept. of Forests & Parks v. Walker*, 385 A.2d 806, 809 (Md. App. 1978).  The law of the case doctrine precludes relitigating issues already decided unless there are clear and convincing reasons to suggest a need for reexamination.  *Major v. CSX Transp.*, 278 F. Supp. 2d 597, 615–16 (D. Md. 2003).

As with their res judicata argument, plaintiffs suggest that *Stolt-Nielsen* represents such a sea change that it provides the "clear and convincing reason" to revisit the issue.  Defendants claim that law of the case should preclude relitigation of the Clause Construction Award decided

---

[2] Defendants claim that the doctrine of *functus officio*, which is related to law of the case doctrine, also applies to bar reconsideration of the clause construction award.  *Functus officio* provides that when an arbitrator has made a final award, he has no more official authority and can do no more regarding the subject matter of the arbitration.  *Mandl v. Bailey*, 858 A.2d 508, 520 (Md. App. 2004).  There are some exceptions to the *functus officio* doctrine: the arbitrator may (1) correct a mistake evident on the face of the award; (2) continue to adjudicate an issue when not fully adjudicated; and (3) clarify ambiguity as to an award which, seemingly complete, leaves some doubt as to whether it has been fully adjudicated.  *Id.*  A partial final award (or interim award) like the Clause Construction Award can be considered final even when there are other proceedings in the overall arbitration as long as the arbitrator states that the award is final and intends it to be final.  *See Bosack v. Soward,* 586 F.3d 1096, 1103 (9th Cir. 2009); *Legion Ins. Co. v. VCW, Inc.,* 198 F.3d 718, 720 (8th Cir.1999).  *Functus officio* is relevant to this case in that it would presumably bar Arbitrator Green from reconsidering the issue, but other than echoing the purpose of law of the case doctrine, it has no direct application to whether this court can reconsider the issue.

by Arbitrator Green and not vacated by this court in 2006.  Defendants also, erroneously, suggest

that this court's refusal to grant a stay and the Fourth Circuit's affirmance of that decision

indicate that the *Stolt-Nielsen* issue has been considered and rejected as a basis for revisiting the

issue.  On the contrary, this court did not review the clause construction award in light of *Stolt-*

*Nielsen* (the refusal to grant a stay came before *Stolt*), and the Fourth Circuit declined to consider

*Stolt*'s impact, striking all references to *Stolt-Nielsen* from plaintiffs' briefing.   Nevertheless, I

agree with defendants that the issue of clause construction has been decided.  No appeal was

taken from this court's decision to allow Arbitrator Green to interpret the agreement to determine

whether class arbitration was appropriate.  Arbitrator Green then issued the Clause Construction

Award, which this court did not vacate.  Green also revisited that decision in light of *Stolt-*

*Nielsen* and found that it did not change his ruling.  I agree with defendants that *Stolt-Nielsen*

does not present a sufficiently compelling reason for this court to review the issue again.

   3.   Application of *Stolt*

   Despite plaintiffs' contention that *Stolt-Nielsen* makes Arbitrator Green's proceedings

*ultra vires*, *Stolt-Nielsen* provides another ground for dismissing plaintiffs' case.  Thus, even if I

were to reject defendants' arguments that res judicata and law of the case bar reconsideration of

the issue, I would find that *Stolt-Nielsen* itself supports dismissing plaintiffs' claim.

   In *Stolt-Neilsen*, the parties stipulated that their arbitration agreement was silent with

respect to class arbitration.  *Stolt-Nielsen*, 130 S. Ct. 1758, 1766 (2010).  The parties further

explained that "silent" did not just mean that the agreement was not explicit in prohibiting or

permitting class arbitration.  *Id*.  Rather, the parties admitted that they had no agreement or intent

with respect to that issue.  *Id*.  Nonetheless, the parties submitted the issue to the arbitration panel

to determine whether class proceedings were appropriate. After a hearing, the panel concluded

that the arbitration clause did not preclude class arbitration. *Id.* The basis for their decision,

however, was that "as a matter of public policy" the agreement should be construed to allow for

class proceedings. *Id*. at 1768. The District Court vacated the award, concluding that it was

made in "manifest disregard" of the law because the arbitrators did not conduct a choice-of-law

analysis and therefore failed to apply the relevant rule of federal maritime law. *Id.* at 1766. The

Court of Appeals reversed, suggesting that because the arbitrators' decision was not *in conflict*

with federal maritime law, it was not in manifest disregard and should be upheld. *Id.* at 1766–

67. The Supreme Court granted *certiorari*.

     The Court held that a party may not be compelled to submit to class arbitration absent a

contractual basis for concluding that the party agreed to do so. *Id*. at 1775. The Court

emphasized the importance of consent and mutual intent to submit to arbitration in general and

*class* arbitration in particular because of its potential for significant rulings with very little

judicial review. *Id*. at 1775–76. Arbitrators are required to give effect to the parties' contractual

rights and expectations. *Id*. at 1774. In doing so, however, arbitrators are not limited to the

words of the agreement. In the opinion, there is no indication that the Court meant that "silence"

on the issue of class arbitration would necessarily result in a finding that class arbitration is

prohibited, but rather that "mere silence" alone does not necessarily indicate consent to resolve

disputes by class proceedings. *Id*. at 1776. Thus, while the arbitrator may not infer implicit

authorization for class-action arbitration solely from the existence of an agreement to arbitrate,

*id*., neither the *Stolt-Nielsen* Court nor subsequent interpretations of the decision require explicit

reference to class arbitration in order to allow it. Indeed, the *Stolt-Nielsen* Court specifically

stated that it was not deciding what was required to indicate agreement to authorize class

arbitration. *Id.* at 1776 n.10. Instead, the Court emphasized that the parties' intent is what should control, and arbitrators need to use applicable law and contract principles (rather than vague references to public policy) to determine the parties' intent.

Rather than interpret *Stolt-Nielsen* as holding that courts should reconsider arbitrators' decisions in class arbitration proceedings, as plaintiffs contend, courts seem to read *Stolt-Nielsen* as underscoring the pre-existing deference to arbitrators' decisions as long as their interpretations have some basis in the parties' agreement. The Fourth Circuit, in a case not involving class arbitration, suggested that *Stolt-Nielsen* confirms that an arbitrator may "supply those terms 'essential to a determination of [the parties'] rights and duties,' so long as the arbitrator does not, in the process, commit the parties to a fundamentally different type or category of arbitration which they have not 'agreed to authorize.'" *Central West Virginia Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 276 (4th Cir. 2011) (alteration in original). Similarly, the Second Circuit explained that any "attempt to equate the lack of an express agreement with a lack of intent to agree to class arbitration . . . misses the mark because it relies on a rationale that *Stolt-Nielsen* did not advance. . . . A primary basis for [*Stolt-Nielsen*] was that the arbitration award went beyond the terms of the agreement and governing law, and the panel relied on public policy grounds to support its finding. . . ." *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 125–26 (2d Cir. 2011).[3]

---

[3] I also note that a Louisiana district court held that *Stolt-Nielsen* was not a basis for vacating the arbitrator's clause construction award (as plaintiffs request here) because the application to vacate was untimely and the defendant there made the choice not to file an objection within the required time frame. *Louisiana Health Serv. Indem. Co. v. Gambro AB.*, 756 F. Supp. 2d 760 (W.D. La. 2010) ("Gambro had the opportunity to timely preserve its argument that the Panel exceeded its authority in issuing the Clause Construction Award by filing its objection within the limitation period . . . just as the petitioner in *Stolt-Nielsen* did by timely arguing that the contract

As the *Stolt-Nielsen* Court requires, Arbitrator Green's decision was made with a contractual basis and with an eye to interpreting the parties' intent.  Plaintiffs claim that the agreement's "silence" should be read to constitute lack of intent to agree, but defendants contend that the terms of the agreement can be interpreted, as Arbitrator Green did interpret them, to indicate agreement to submit to class arbitration.  Just as this court held in 2006 in declining to vacate the arbitrator's Clause Construction Award, Green's interpretation of the contract was based on the language of the agreement, despite its lack of clear terms regarding class arbitrations.  Referring to contract law principles and applicable AAA rules, Green determined that the agreement did not preclude class proceedings.  In his own reconsideration of the Clause Construction Award in light of *Stolt-Nielsen*, Green reiterated that his decision "did in fact construe the contract language." (Green Ruling on Mot. to Stay at 14, ECF No. 7-12.)  Green noted that because the agreement says that "all disputes" shall be arbitrated and makes only one specific prohibition on class treatment (class actions in court), the language of the agreement could be read to authorize class arbitrations.  (*Id.*)  Given that Green did not use amorphous "public policy principles" in construing the terms of the agreement and instead relied on applicable law and contract principles, his determination did not run afoul of *Stolt-Nielsen*.  Thus, even if I were to reconsider Green's ruling allowing for class arbitration, *Stolt-Nielsen* would not require a different outcome.

Finally, if I were to reconsider the decision in light of *Stolt-Nielsen*, I would need to do so with the traditional deference given to arbitration decisions.  Plaintiffs contend that consent to class arbitration is a "gateway" issue to be decided by the court, with no deference to the

---

did not permit class arbitration.  Because Gambro chose not to file such an objection, the Court is powerless to hear it now.").

arbitrator.  They cite no authority for this position, however.  The *Stolt-Nielsen* Court, when faced

with this question, said that while a plurality of the *Bazzle* Court thought that an arbitrator (rather

than a court) should answer the question whether a contract forbids class arbitration, there was

no need to revisit the issue in *Stolt-Nielsen* because the parties agreed to assign this issue to the

arbitrator.  *Stolt-Nielsen*, 130 S. Ct. at 1772.  Here as well, plaintiffs did not appeal this court's

2006 ruling that the arbitrator should determine whether class proceedings were appropriate.

      Judicial review of arbitration is severely circumscribed.  *Apex Plumbing Supply, Inc. v.*

*U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998).  In particular, an arbitrator's interpretation of

a contract and the law governing the contract is accorded great deference.  *Upshur Coals Corp.*

*v. United Mine Workers of America, Dist. 31*, 933 F.2d 225, 228–29 (4th Cir. 1991).  Although a

court may disagree with the arbitrator's interpretation, the court must uphold it so long as the

interpretation "draws its essence from the agreement."  *Patten v. Signator Ins. Agency, Inc.*, 441

F.3d 230, 234 (4th Cir. 2006); *Upshur*, 933 F.2d at 229.  Similarly, an arbitrator's legal

determination is entitled to deference unless it is "in manifest disregard of the law."[4]  *Id.*  The

---

[4] In *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576 (2008), the Supreme Court held that the statutory grounds in the FAA are the exclusive means by which an arbitral award may be vacated: (1) Where the award was procured by corruption, fraud, or undue means; (2)Where there was evident partiality; (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing or hear relevant evidence, or any other misbehavior that may have prejudiced the parties; or (4) Where the arbitrator exceeds his powers or so imperfectly executes them that a definite award was not made.  Some courts have interpreted this to mean that "manifest disregard of the law" is no longer an independent ground for vacating arbitration awards.  Other courts view "manifest disregard" as a shorthand term for the statutory bases listed in the FAA.  In *Stolt-Nielsen* the Supreme Court itself, however, declined to decide whether "manifest disregard" survives the *Hall* decision.  *See Stolt-Nielsen*, 130 S. Ct. at 1768 n.3.

      The Fourth Circuit has yet to rule on this issue.  *See Sharp v. Downey*, 13 A.3d 1, 21 (Md. App. 2010); *see also MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (2010) (declining to decide whether "manifest disregard" still stands after *Hall*).  In any case, for the reasons discussed in this memorandum, Arbitrator Green was not acting in excess of his

arbitrator's decision is enforceable even if it resulted from a misinterpretation of the law, faulty

legal reasoning, or erroneous legal calculation. *Id.* A court may only overturn the arbitrator's

decision if the party moving for vacatur shows that the arbitrator was aware of the law,

understood it, found it applicable to the case at hand, and still chose to ignore it in making his

decision. *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994).

As this court stated in 2006, "Green's decision that the contract was ambiguous is

supported by the plain language of the contract, and the decision is not even close to being in

manifest disregard of the law." *Genus Credit Mgmt. Corp. v. Jones*, No. Civ. JFM-05-3028,

2006 WL 905936, at * 3 (D. Md. April 6, 2006). Moreover, Green has reviewed his decision in

light of *Stolt-Nielsen* and found that it did not change his analysis. The Second Circuit held that

*Stolt-Nielsen* does not provide a license for district courts to review an arbitrator's interpretation

because, as before *Stolt-Nielsen*, an arbitrator's decision cannot be reversed merely because it is

wrong. *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113 (2d Cir. 2011). In this case, it is not clear

that Green's decision is off-base, but even if it were, it is certainly not in manifest disregard of

the law. Thus, if this court were to overlook defendants' arguments as to res judicata and law of

the case and review Green's determination, *Stolt-Nielsen* itself and the principle of deference to

Green's decision would preclude a reversal of his decision to allow class arbitration.

B. Maryland Law

Finally, plaintiffs contend that the Maryland Uniform Arbitration Act permits injunctive

relief in this case. Section 3-208(a) of the Act, however, only permits a stay when one of the

---

authority in determining the meaning of the agreement's language, nor was he acting in manifest
disregard of the law, so by both standards, his decision should stand.

parties disputes the *existence* of an agreement to arbitrate.  In this case, neither party disputes that

they have an agreement to arbitrate; the parties dispute the proper interpretation of that

agreement as applied to class arbitrations.  Therefore, the Maryland Uniform Arbitration Act

provides no relief.

      III.     Attorneys' Fees under 28 U.S.C. § 1927

      Federal law provides that when "any attorney or other person admitted to conduct cases .

. . multiplies the proceedings in any case unreasonably and vexatiously," he or she "may be

required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Defendants argue that, after

multiple rounds of briefing and determinations by this court, the arbitrator, and now the Fourth

Circuit, plaintiffs have acted in bad faith in filing this new proceeding and in filing their Rule

60(b) motion.  Defendants also claim that plaintiffs' choosing to file a motion in an existing case

as well as instituting a new action is further evidence of vexatious conduct.  Plaintiffs' counsel

admit to being confused about the correct procedural decision to make but have not otherwise

fully briefed the issue of attorneys' fees.  Defendants assert that plaintiffs' confusion should not

excuse the multiplicity of actions, especially when defendants have been faced with the

additional burden of addressing two different motions in two related cases while class arbitration

moves forward.

      Defendants are rightly frustrated and rightly point out that plaintiffs have added more

litigation at the eve of the resolution of the arbitration now pending for seven years.  However, a

finding of bad faith must precede an award of attorneys' fees.  *Thomas v. Treasury Mgmt. Ass'n,

Inc.*, 158 F.R.D. 364, 371 (D. Md. 1994).  While these related cases present a particularly

procedurally complex mess of motions, I do not believe plaintiffs have acted in bad faith.

For the preceding reasons, defendants' motion to dismiss 11-2844 is granted (thereby mooting plaintiffs' motion for summary judgment), plaintiffs' Rule 60(b) motion in 05-3028 is denied, and defendants' motion for attorneys' fees is denied.


January 17, 2012
Date

_____/s/_____
J. Frederick Motz
United States District Judge